**OWEN, WICKERSHAM & ERICKSON, P.C.**
Lawrence G. Townsend CBN 88184
455 Market Street, Suite 1910
San Francisco, CA 94105
Tel:  (415) 882-3200
Fax:  (415) 882-3232
ltownsend@owe.com

-AND-

**McCARTER & ENGLISH, LLP**
Gary H. Fechter (*pro hac vice* admission pending)
Lori J. Shyavitz (*pro hac vice* admission pending)
Irene M. Hurtado (*pro hac vice* admission pending)
245 Park Avenue, 27th Floor
New York, NY  10167
Tel: (212) 609-6800
Fax: (212) 609-6921
gfechter@mccarter.com
lshyavitz@mccarter.com
lhurtado@mccarter.com

*Attorneys for Plaintiff*
*Hachette Filipacchi Presse*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HACHETTE FILIPACCHI PRESSE, <br><br> Plaintiff, <br> v. <br><br> ELIZABETH ANDERSON d/b/a ELLE A EVENTS, <br><br> Defendant. | Civil Action No. <br><br> **COMPLAINT** <br> **WITH JURY DEMAND** |

Plaintiff Hachette Filipacchi Presse ("Hachette" or "Plaintiff"), by its undersigned attorneys, McCarter & English, LLP, alleges as its Complaint against Defendant Elizabeth Anderson d/b/a Elle A Events ("Defendant") as follows:

## JURISDICTION AND VENUE

1.    This is an action for injunctive relief and damages for trademark infringement, trademark dilution, unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq. (the "Lanham Act"), and for trademark infringement, trademark dilution, and unfair competition under the laws of the State of California.

2.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121. This Court has jurisdiction pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367 over Hachette's claims for trademark infringement, trademark dilution, unfair competition under the laws of the State of California.

3.    This Court has personal jurisdiction over Defendant because Defendant: (a) is present in and transacts business in the State of California; (b) has had continuous, systematic and substantial business contacts with residents of this District; and/or (c)  has deliberately created confusion among Hachette's existing and potential customers, many of whom reside in California.

4.    Venue is proper in this district under 28 U.S.C. § 1391(c) because this Court has personal jurisdiction over Defendant in this judicial district and a substantial part of the events or omissions giving rise to Hachette's claims occurred in this District.

## THE PARTIES

5.    Plaintiff Hachette Filipacchi Presse is a corporation, organized and existing under the laws of France, having its principal place of business at 149 Rue Anatole, Levallois-Perret Cedex, 92534, France.

6.     Upon information and belief, Defendant Elizabeth Anderson is an individual and a citizen of the United States.  Upon information and belief, Ms. Anderson is offering party and event planning services under the trade name ELLE A EVENTS and is doing business as ELLE A EVENTS.

## FACTS COMMON TO ALL CLAIMS

**A.    Hachette's Famous ELLE Trademarks**

7.     Hachette is the owner of the world famous brand ELLE.

8.     Since 1945, Hachette, directly and through its predecessors and licensees, has been engaged in the sale of a wide spectrum of goods and services under the mark ELLE, alone and with other words, including without limitation the publication, distribution and sale of the world-famous women's magazine entitled *ELLE*.    This magazine is a unique mixture of fashion, beauty, health, entertainment, culture, topical events, and food articles.

9.     *ELLE* magazine was launched in the United States in 1985.  *ELLE* is said to be the world's largest fashion magazine, with 46 international editions in over 60 countries, and 23 million readers globally.  Since its launch *ELLE* magazine has become one of the most pre-eminent fashion magazines in existence, replete with articles and advertisements for a wide range of fashion and beauty related products.

10.     *ELLE* magazine is extensively promoted nationwide via the Internet, at newsstands and elsewhere, and enjoys substantial sales and reputation.  *ELLE* magazine features extensive coverage (*e.g.*, articles, photography and advertisements) concerning parties, entertaining, weddings and other events, fashion, accessories, beauty tips, cosmetics, make-up and entertainment, as well as reviews and advertisements regarding events, apparel, accessories, cosmetics and make-up.  *ELLE* magazine also offers its readers fashion, hair, beauty and skin care information and advice and information related to entertainment and events,

including "The ELLE Style Guide to Weddings," on its website, www.elle.com, and a wedding blog on its website, www.elleuk.com.

11.    *ELLE* magazine has been regularly distributed in the United States since its launch in 1985.  The U.S. edition of *ELLE* magazine is widely circulated in print, with approximately 1.1 million copies sold monthly for a reach of approximately 5.5 million readers.  *ELLE* magazine is also digitally available on Opposer's ELLE.com website, which receives over 6.5 million unique visitors for a total of approximately 25 million pages viewed each month, and, since at least as early as September 2010, on Apple and Android tablets through an ELLE application.    ELLE's application reaches over 40,000 readers each month. Opposer's ELLE electronic newsletter is circulated weekly to its 130,000 subscribers.

12.    Moreover, *ELLE* magazine is seen by and is familiar to countless more consumers, as it is typically conspicuously displayed and sold at check-out counters in grocery and convenience stores, drugstores, bookstores and other similar retail locations, and is frequently available for reading at offices and spas.

13.    As one of the most preeminent fashion magazines in existence, replete with articles and advertisements for a wide range of fashion, other products, entertainment and event information, *ELLE* magazine and the ELLE brand have become iconic in the fashion industry.

14.    In 1989, Opposer launched *ELLE DECOR* magazine in the United States.    *ELLE DECOR* magazine is part of the *ELLE DECORATION* network, which is said to be the world's largest design magazine network, with 25 international editions, as well as editions covering 7 other territories.  The *ELLE DECORATION* network thus covers over 35 countries, and 10 million readers globally.  Since its launch *ELLE DECOR* magazine has become one of the most pre-eminent design magazines in existence, featuring extensive coverage (*e.g.*,

articles, photography and advertisements) concerning interior and exterior decorating, design, celebrity style and party planning.

15.    *ELLE DECOR* magazine has been regularly distributed in the United States since its launch in 1989.  The U.S. edition of *ELLE DECOR* magazine is widely circulated in print and via a digital edition and enjoys substantial sales and reputation.  Sales of *ELLE DECOR* magazine reached over half a million readers in the United States since 2013.  *ELLE DECOR* magazine is also available on the ELLEDECOR.com website, with 17 million page views and over 1.6 million unique visitors as of August 2016. Moreover, the magazine is seen by and is familiar to countless more consumers, as it is extensively promoted and conspicuously displayed on the Internet, at newsstands, bookstores, convenience stores, drugstores and other similar retail locations, is frequently available for reading at offices and spas.

16.    Not only are *ELLE* and *ELLE DECOR* famous as magazine publications in the fashion and interior and exterior decorating and design industries, respectively, but the *ELLE* and *ELLE DECOR* marks have also established a strong presence on the Internet through numerous websites, including, but not limited to www.elle.com, www.elleuk.com and www.elledecor.com, each of which has millions of visitors per month.  For example, the elle.com website features videos and film clips of ELLE organized and sponsored events, as well as videos and film clips in the fields of fashion and accessories, hair and beauty, pop culture, film, news, life and love, shopping, and other topics of interest, plus links to third-party videos.  The elle.com site also offers a video platform with eight channels, which include fashion, celebrity and runway features. Consequently, Hachette's ELLE mark enjoys great media presence.

17.    The ELLE mark has been extensively used in connection with a wide range of goods and services, including, but not limited to, clothing, shoes, the online publication of books and magazines, cosmetics, perfumes, furniture, electronic applications and goods, including fitness DVDs, videos, iPad applications and mobile applications, appliances such as phone and phone accessories, electronic publications, jewelry, cell phones, hair accessories, entertainment services, watches, eyewear, bags and giftware advice as a natural extension of *ELLE* magazine's focus on fashion, shopping, beauty, pop culture, music, film, entertainment, art and celebrities.

18.    The ELLE mark has also been used extensively in connection with entertainment related services, events and promotions, as a natural extension of its focus on fashion, pop culture, music, film, art and celebrities.  Among these many activities, since 2010 Opposer has organized and sponsored the ELLE Women in Music and ELLE Women in Television events, which honors some of the top female entertainers.  Also, Fall 2016 marks the twenty-third year that Opposer has sponsored its ELLE Women in Hollywood event, honoring some of the top female film actresses.  These events, which are organized and held in California, are widely reported in internationally distributed media such as *USA Today, The Hollywood Reporter*, *Variety*, *Celebrity Gossip*, *The Los Angeles Times*, *The Huffington Post*, *The Denver Post*, *YouTube* and, of course, in *ELLE* magazine and in elle.com and other widely distributed publications and websites.  Indeed, *ELLE* magazine devotes entire issues of the magazine to the ELLE Women in Hollywood, ELLE Women in Television and ELLE Women in Music events, as well as features content from those events on the elle.com website.

19.    Since at least as early as 1965, and prior to any date upon which Defendants can rely, Hachette, through its licensee, has used in commerce the trademark ELLE for clothing, resulting in millions of dollars of sales of such

merchandise in the United States.  For example, ELLE apparel is sold nationwide at Kohl's retail establishment and via the kohls.com website.

20.    The ELLE mark is universally recognized as a distinct brand associated with inspiring women and girls to create and embrace their own style as well as other positive values in modern society.  On account of this reputation, Hachette enjoys a prominent following on numerous social media channels, including, but not limited to, Facebook, Twitter, Pinterest, Instagram, YouTube and Google+.  For example, there are various Facebook pages dedicated to Hachette, including *ELLE Magazine (US), ELLE* and *ELLE DECOR Magazine*, among others.  The numbers for all of Hachette's social media platforms for both *ELLE* magazine and *ELLE DECOR* magazine have continued to grow year over year whereby today Hachette has a total of 15.9 million friends and fans via social media for *ELLE* magazine and over 6 million social media followers for *ELLE DECOR* magazine.

21.    Hachette owns numerous trademark registrations and applications for its family of ELLE-formative marks covering various goods and services (collectively, "Hachette's Goods and Services"), identified in **Exhibit A** hereto (collectively, the "ELLE Marks"), including, but not limited to, U.S. Registration No. 0758137, for the mark ELLE, claiming first use in 1945.

22.    In particular, Hachette owns U.S. Registration No. 4,284,558 for the trademark ELLE in connection with a variety of goods and services, including "services for the public entertainment, namely, organization of shows for cultural purposes; organization of conferences, forums, congresses, colloquiums in the fields of fashion, beauty, entertainment, cooking, music, theater, cinema, literature, arts, education, home decoration, gardening, landscaping, media for non business purposes," in Class 41, and "providing an online service featuring photographs and other multimedia materials in the fields of entertainment," in Class 41.  A copy of

7

the Certificate of Registration for U.S. Registration No. 4,284,558 is included in Exhibit A hereto.  This mark has been in use since at least as early as 1996 in connection with the organization of various events, including, but not limited to, ELLE WOMEN IN HOLLYWOOD, ELLE WOMEN IN MUSIC and ELLE WOMEN IN TELEVISION.

23.  Many of the registrations for the ELLE Marks are incontestable, including U.S. Registration Nos. 0758137, 0861159, 1429609, 2120688, 2199132, 2242315, 3727498, 3745516, 4284558, 1668272 and 1732988.

24.  All of the registrations for the ELLE Marks are valid and subsisting, unrevoked and uncancelled, and are prima facie evidence of the validity of Hachette's exclusive right to use the ELLE Marks in commerce in connection with the goods and services described in the registrations, without condition or limitation, and constitute constructive notice of Hachette's ownership of the ELLE Marks for the goods and services described in the registrations, as provided for by Sections 7(b) and 22 of the Lanham Act, 15 U.S.C. §§ 1057(b) and 1072.

25.  As a result of Hachette's many years of effort advertising, promoting, marketing and selling magazines and other products in connection with the ELLE Marks, the ELLE Marks have become famous marks entitled to the utmost protection.

26.  The Trademark Trial and Appeal Board has determined that Hachette's mark ELLE "is famous in connection with its magazine and within the fashion industry generally, and is entitled to broad protection."  *Hachette Filipacchi Presse v. Ev Int'l, LLC*, Opposition No. 91174433 (Sept. 5, 2008).  A true and correct copy of this decision is attached hereto as **Exhibit B**.

27.  To date, Hachette has invested significant time and effort advertising and promoting its magazines and products bearing the ELLE Marks in the United States and throughout the World, and Hachette prominently displays the distinctive

ELLE Marks in its advertising and promotional materials. Hachette's efforts in this regard have resulted in widespread recognition of the ELLE Marks. For example, as of 2012, *ELLE* magazine experienced 262 million press impressions each month. This number has grown significantly year over year, whereby as of 2016, *ELLE* receives 1.5 billion press impressions each month.

28.    As a result of Hachette's extensive efforts, Hachette has enjoyed significant circulation of its magazines bearing the ELLE Marks and significant sales of products bearing the ELLE Marks over the many years that the ELLE Marks have been used by Hachette.

29.    As a result of the extensive advertising of *ELLE* magazine and ELLE-branded products and services in the United States, and the widespread sale and success of *ELLE* magazine and *ELLE*-branded products and services in the United States, the public, consumers, and the trade generally have come to associate the distinctive ELLE Marks with magazines, apparel and other products and services of exceptional quality, materials, style, and reliability, and have come to recognize that magazines, apparel and other products and services bearing the ELLE Marks originate from Hachette.

30.    Hachette's sales of its *ELLE* magazine and ELLE-branded products have been significant. Between 2007 and 2012, Hachette sold approximately $900 million worth of *ELLE* magazines, ELLE-branded fashion products, including clothing, and cosmetics in the United States.

31.    Hachette's licensed fashion items have generated revenues of over one billion dollars in retail stores within an average of $650 million annually between 2005 and 2009. Between 2007 and 2012, Opposer and its retail partners have spent more than 15 million dollars to promote the sale of *ELLE* magazines, ELLE-branded fashion products and cosmetics.

32.    In addition, Hachette and *ELLE* magazine and *ELLE DECOR* magazine have won numerous awards.   For example, *ELLE* magazine was recognized as the 2008 Magazine of the Year, awarded by the Accessories Council, and received three awards for editorial excellence by the Fragrance Foundation in 2011.  Hachette was also selected as 2009's Most Engaged Media Brands.  In 2010, *ELLE DECOR* was ranked number eight on the Advertising Age A-List.  In 2011, *ELLE DECOR* was ranked number three on Adweek's Hot List and was named a Circle of Success Winner by CircMatters.  In 2012, Hachette and *ELLE* magazine received several awards, including, but not limited to, the FiFi Award for Editorial Excellence, Best Site Redesign from the MIN Editorial & Design Awards, Best Cover & Best Editor's Letter from the Huffington Post, Runner Up for Magazine Publisher of the Year from the Delaney Report, Marketing and Media Awards, Honorable Mention for Best Online feature from the MIN Editorial & Design Awards, and Elle magazine was also recognized was Digitally 'Gifted' by L2 Digital Think Tank.  In 2013, *ELLE* magazine and Hachette were ranked number five on the Advertising Age A-List and won an award for Creative Director of the Year from The Daily.

33.    The ELLE mark is vital to Hachette and represents not only Hachette's products and services, but also its reputation.  Hachette will suffer irreparable harm if third parties, including the Defendant herein, are allowed to trade off Hachette's reputation and goodwill by promoting, offering for sale and selling goods and services bearing marks confusingly similar to the ELLE mark.

**B.    The Defendant's Conduct**

34.    Upon information and belief, Defendant made first use in commerce of the trade name and trademark ELLE A EVENTS (the "Infringing Mark") on or about September 19, 2012.   Attached hereto as **Exhibit C** are examples of Defendant's use of the Infringing Mark.

35.    Upon information and belief, since at least as early as September 19, 2012, Defendant has been advertising, promoting, marketing, offering for sale, selling and/or providing  party and event planning services ("Defendant's Services") under the Infringing Mark, which is confusingly similar to Hachette's ELLE Marks.

36.    Upon information and belief, on March 22, 2013 Defendant filed an application with the United States Patent and Trademark Office to register the mark ELLE A EVENTS, which was assigned Serial No. 85883465 ("Defendant's Trademark Application").  Defendant's Trademark Application covered "Party and wedding reception planning, coordination and consultation services; Providing information in the field of wedding party planning; Providing information regarding wedding reception planning for wedding parties; Party planning consultation; Party planning" in International Class 41 and claimed a first use date of August 1, 2012 and a first use in commerce date of September 19, 2012.

37.    Hachette opposed the registration of Defendant's Trademark Application in the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office.  On October 22, 2014, the TTAB entered judgment against Defendant.  In its decision, the TTAB sustained the notice of opposition and refused registration of Applicant's ELLE A EVENTS mark.

38.    Upon information and belief, Defendant's use of the Infringing Mark in connection with Defendant's Services infringes the ELLE Marks and alludes to Hachette, *ELLE* magazine, *ELLE DECOR* magazine and services offered by Hachette in connection with the ELLE Marks, thereby trading upon Hachette's goodwill.

39.    Defendant's use of the Infringing Mark on or in connection with the advertising, marketing, offer for sale, sale and provision of Defendant's Services is likely to cause consumers to mistakenly believe that Defendant's Services, offered

in connection with the Infringing Mark,  emanate from or are authorized and/or approved by Hachette.

40.     Defendant, without authorization or license from Hachette, has adopted and is using the Infringing Mark, which includes the term ELLE as the primary and dominant term, in connection with party and event planning services. Attached hereto as **Exhibit D** is a true and correct copy of a printout of excerpts of Defendant's website.

41.     Upon information and belief, Defendant's Services travel in the same channels of trade as Hachette's Goods and Services.

42.     Upon information and belief, Defendant's Services are intended for consumption by the same types of consumers that purchase Hachette's Goods and Services offered in connection with the ELLE Marks.

43.     Defendant's use of the Infringing Mark on or in connection with the advertising, marketing, offering for sale, sale and/or provision of Defendant's Services is causing irreparable harm to Hachette.

**COUNT ONE**

**FEDERAL TRADEMARK INFRINGEMENT**

**(15 U.S.C. § 1114)**

44.     Hachette repeats and re-alleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

45.     Hachette's ELLE Marks and the goodwill of the business associated with those marks in the United States and throughout the world are of great and incalculable value.

46.     The ELLE Marks are highly distinctive and arbitrary, and have become universally associated in the public mind with the fashion magazines and products of the very highest quality and reputation, emanating from Hachette.

47.    Upon information and belief, without Hachette's authorization or consent, and having knowledge of Hachette's well-known and prior rights in the ELLE Marks, Defendant has advertised, promoted, distributed, offered for sale and/or sold Defendant's Services in connection with the Infringing Mark to the consuming public, thereby affecting interstate commerce.

48.    Upon information and belief, Defendant's use of the Infringing Mark in connection with Defendant's Services is likely to cause and has already caused confusion, mistake and deception among the general purchasing public as to the origin of Defendant's Services, and is likely to deceive the public into believing that Defendant's Services being offered and sold by Defendant originate from, are associated with, or are otherwise authorized by, Hachette, all to the damage and detriment of Hachette's reputation and goodwill.

49.    Hachette has no adequate remedy at law and, if Defendant's infringing activities are not enjoined, Hachette will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT TWO

## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

50.    Hachette repeats and re-alleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

51.    Defendant's Services offered and sold by Defendant are of the same general nature and type as services offered and sold by Hachette under the ELLE Marks and, as such, are likely to cause confusion to the general purchasing public.

52.    By using the Infringing Mark, which includes the term ELLE as the primary and dominant term, Defendant misrepresents and falsely describes to the general public the origin and source of Defendant's Services, thereby creating a

13

likelihood of confusion among consumers as to both the source and sponsorship of such merchandise.

53.     Defendant's unlawful, unauthorized and unlicensed offer for sale, sale, and/or provision of Defendant's Services in connection with the Infringing Mark falsely represents to consumers that Defendant's Services are associated with, authorized by or approved by Hachette, all to Defendant's profit and Hachette's great damage and injury.

54.     Defendant's aforesaid acts are in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendant's use of the Infringing Mark, in connection with Defendant's Services, in interstate commerce constitutes a false designation of origin and unfair competition.

55.     Hachette has no adequate remedy at law and, if Defendant's activities are not enjoined, Hachette will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT THREE
## FEDERAL TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

56.     Hachette repeats and re-alleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

57.     Hachette's ELLE Marks are widely recognized by the general consuming public in the United States as a singular designation of the source of Hachette's goods and services and thus are "famous marks" within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and were famous marks prior to Defendant's conduct as alleged herein.

58.     Defendant's marketing, offer for sale, provision and/or sale in commerce of Defendant's Services is likely to and does dilute the distinctive

14

quality of the ELLE Marks, and was done, upon information and belief, with the willful intent to trade on Hachette's reputation and/or to cause dilution of the ELLE Marks.

59.    Defendant's unauthorized use of the Infringing Mark in connection with Defendant's Services was done with notice and full knowledge that such use, distribution, provision, sale and/or offer for sale was not authorized or licensed by Hachette.

60.    Defendant's aforesaid acts are in knowing and willful violation of Hachette's rights under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

61.    Hachette has no adequate remedy at law and, if Defendant's activities are not enjoined, will continue to suffer irreparable harm and injury to Hachette's goodwill and reputation.

## COUNT FOUR

## TRADEMARK INFRINGEMENT UNDER CALIFORNIA LAW

62.    Hachette repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

63.    Defendant has, without authorization from Hachette, adopted and used the Infringing Mark, which infringes the ELLE Marks to advertise, market, offer for sale, sell and provide Defendant's Services.

64.    Defendant's acts as alleged herein are likely to cause confusion, mistake, and deception to consumers as to the affiliation, connection, or association of Defendant with Hachette, and as to the origin, sponsorship, or approval of Defendant's Services by Hachette.

65.    Defendant's unauthorized acts constitute direct infringement of the ELLE Marks in violation of California common law.

66.     Upon information and belief, Defendant's conduct is intentional, malicious, and wanton in that Defendant infringed and continues to infringe the ELLE Marks (i) with full knowledge that Hachette owns and has the exclusive right to use the ELLE Marks, (ii) with the intention of causing a likelihood of confusion and mistake and to deceive, and (iii) with the intention of unfairly competing with Hachette.  Further, Defendant had notice from Hachette to cease its infringing activities, yet chose to continue its infringing activities.

67.     Hachette has suffered, is suffering, and will continue to suffer irreparable injury for which Hachette has no adequate remedy at law.  Hachette therefore is entitled to temporary, preliminary and permanent injunctive relief against Defendant's further infringing conduct.

## COUNT FIVE

## FALSE ADVERTISING UNDER CALIFORNIA STATE LAW
## [CALIFORNIA BUS. & PROF. CODE §§ 17500 AND 17535]

68.     Hachette repeats and re-alleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

69.     From its offices in California, Defendant has, upon information and belief, disseminated or caused to be disseminated advertisements and solicitations for Defendant's Services featuring the Infringing Mark to advertise and promote Defendant's Services.  In doing so, Defendant has falsely represented that there is an association, affiliation, connection or relationship with Hachette.  No such association, affiliation, connection or relationship exists between Hachette and Defendant.

70.     Defendant's acts as alleged herein constitute the use of deceptive, untrue and misleading advertising, of which Defendant knew or should have known, thereby impairing Hachette's goodwill and otherwise adversely affecting

16

Hachette's business and reputation. These acts constitute false advertising under California Business and Professions Code §§ 17500 and 17535, and California common law.

71.   Money damages will not adequately remedy Hachette's injuries. Hachette therefore is entitled to temporary, preliminary and permanent injunctive relief prohibiting Defendant from continuing such acts of false and misleading advertising.

72.   Hachette also is entitled to damages, Defendant's profits, and other remedies according to proof at trial, including costs and attorneys' fees.

## COUNT SIX

## UNFAIR COMPETITION UNDER STATE LAW

## [CALIFORNIA BUS. & PROF. CODE §§ 17200 AND 17203]

73.   Hachette repeats and re-alleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

74.   The ELLE Marks are wholly associated with Hachette due to its extensive use of the ELLE Marks. As such, Hachette is deserving of having the ELLE Marks adequately protected with respect to the conduct of its business.

75.   Defendant's wrongful conduct as alleged herein constitutes unfair competition and unfair business practices.

76.   Based on the wrongful, unlawful, fraudulent and unfair acts described herein, Defendant is in violation of California Business and Professions Code §§ 17200 and 17203.

77.   Hachette has suffered, is suffering, and will continue to suffer monetary loss as a result of Defendant's unfair business practices.

78.   Hachette has suffered, is suffering, and will continue to suffer irreparable harm and injury for which Hachette has no adequate remedy at law.

Hachette therefore is entitled to temporary, preliminary and permanent injunctive relief against further unfair conduct by Defendant.

79. Defendant has profited and is profiting from such unfair conduct.

80. Hachette therefore is entitled to recover restitution in the form of Defendant's profits, in an amount to be proved at trial, as a consequence of Defendant's wrongful activities.

**COUNT SEVEN**

**UNFAIR COMPETITION UNDER STATE LAW**

**[CALIFORNIA LAW]**

81. Hachette repeats and re-alleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

82. The ELLE Marks are wholly associated with Hachette due to its extensive use of the ELLE Marks. As such, Hachette is deserving of having the ELLE Marks adequately protected with respect to the conduct of its business.

83. Defendant's aforesaid conduct has been wrongful, unlawful, unfair, fraudulent, willful, wanton and malicious, done with intent, and in conscious disregard for the rights of Hachette in violation of California Civil Code § 3294(a). Hachette therefore is entitled to punitive damages pursuant to California Civil Code § 3294(a).

**PRAYER FOR RELIEF**

WHEREFORE, Hachette prays that this Court enter judgment against Defendant as follows:

1. That Defendant and Defendant's agents, servants, employees, attorneys, and all persons acting for, with, by, through or under them be permanently enjoined and restrained from:

(a) using in any manner any of Hachette's ELLE Marks, the Infringing Mark, any mark that includes the term ELLE, or any other mark which so resembles the ELLE Marks as to be likely to cause confusion, deception, or mistake on or in connection with the advertising, offering for sale, sale or provision of any services not emanating from Hachette, or not authorized by Hachette to be sold in connection with the ELLE Marks, including but not limited to Defendant's Services;

(b) passing off, inducing, or enabling others to sell or pass off any services as and for services offered by Hachette, when such services are not in fact Hachette's services, or are not offered or produced under the control and supervision of Hachette and approved by Hachette for sale under any of the ELLE Marks;

(c) committing any acts calculated to cause purchasers to believe that Defendant's Services are those sold under the control and supervision of Hachette, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of Hachette;

(d) further diluting and infringing any of the ELLE Marks and damaging Hachette's goodwill;

(e) from otherwise competing unfairly with Hachette in any manner; and

(f) shipping, delivering, distributing, returning or otherwise disposing of, in any manner, advertising and promotional material bearing the Infringing Mark, any mark that includes the term ELLE, any of the ELLE  Marks, or any mark confusingly similar thereto.

2.    That Defendant be required to deliver up to Hachette any and all advertising matter, promotional, and other materials in the possession of Defendant

or under Defendant's control bearing the Infringing Mark, any mark that includes the term ELLE and/or any mark that is confusingly similar to the ELLE Marks.

3.     That Defendant, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Hachette a written report under oath setting forth in detail the manner in which Defendant has complied with paragraphs 1 through 2, *supra.*

4.     That Defendant account for and pay over to Hachette all profits realized by the Defendant by reason of Defendant's unlawful acts herein alleged and, that the amount of damages for infringement of Hachette's registered trademarks be increased by a sum not exceeding three times the amount thereof as provided by law.

5.     That Hachette be awarded actual damages of an amount to be proven at trial.

6.     That Hachette be awarded interest, including pre-judgment interest, on all sums.

7.     That Hachette be awarded reasonable attorneys' fees and have such other and further relief as the Court may deem equitable.

8.     That Hachette have such other and further relief as the Court deems just and proper.

Dated:      April 27, 2017

**OWEN, WICKERSHAM & ERICKSON, P.C.**

By:   /s/ Lawrence G. Townsend
      Lawrence G. Townsend
      455 Market Street, Suite 1910
      San Francisco, CA 94105
      ltownsend@owe.com
      Tel:  (415) 882-3200
      Fax:  (415) 882-3232

      and

Gary H. Fechter (*pro hac vice* admission pending)
Lori J. Shyavitz (*pro hac vice* admission pending)
Irene M. Hurtado (*pro hac vice* admission pending)
McCARTER & ENGLISH, LLP
245 Park Avenue, 27th Floor
New York, NY 10167
Tel: (212) 609-6800
Fax: (212) 609-6921
gfechter@mccarter.com
lshyavitz@mccarter.com
ihurtado@mccarter.com

*Attorneys for Plaintiff*
*Hachette Filipacchi Presse*

21

ME1 24585085v.1 COMPLAINT WITH JURY DEMAND

## <u>JURY DEMAND</u>

Hachette demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure for all issues so triable.

Dated:      April 27, 2017     **OWEN, WICKERSHAM & ERICKSON, P.C.**

By: <u>/s/ Lawrence G. Townsend</u>
Lawrence G. Townsend
455 Market Street, Suite 1910
San Francisco, CA 94105
ltownsend@owe.com
Tel:  (415) 882-3200
Fax:  (415) 882-3232

and

Gary H. Fechter (*pro hac vice* admission pending)
Lori J. Shyavitz (*pro hac vice* admission pending)
Irene M. Hurtado (*pro hac vice* admission pending)
McCARTER & ENGLISH, LLP
245 Park Avenue, 27th Floor
New York, NY  10167
Tel: (212) 609-6800
Fax: (212) 609-6921
gfechter@mccarter.com
lshyavitz@mccarter.com
ihurtado@mccarter.com

*Attorneys for Plaintiff*
*Hachette Filipacchi Presse*